UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| QUAMAYNE SIMMONS, <br><br> Plaintiff, <br><br> v. <br><br> JOHN GALIPEAU, LIVERS, ALLEN, KELLY, CHAPMAN, WHITAKER, GLEESON, and BLACK, <br><br> Defendants. | CAUSE NO. 3:22-CV-783-JD-MGG |

OPINION AND ORDER

Quamayne Simmons, a prisoner without a lawyer, filed a complaint and a motion for a preliminary injunction. ECF 1, 3. As relevant here, he was granted leave to proceed against Warden John Galipeau in his official capacity "for injunctive relief to receive constitutionally adequate medical care for his cancer as required by the Eighth Amendment[.]" ECF 5 at 7. The Warden was ordered to respond to the motion and address the status of Simmons' medical condition. He has filed a response. ECF 10. However, his response does not sufficiently address the issues raised in the preliminary injunction motion, so the Warden will be required to supplement his response.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true, nor do[es] [it] give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must conduct an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions—"those requiring an affirmative act by the defendant"—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir.

2

2012) (citations and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining the strict limitations on granting injunctive relief under the Prison Litigation Reform Act).

In March 2021, Simmons was diagnosed with stage IIIC colon cancer while he was housed at a different facility. ECF 10-1 at 35. He underwent a colectomy with a colostomy and then received radiation and chemotherapy for several months. *Id.* His treatment concluded on July 28, 2021. *Id.* He was transferred to Westville seven months later on February 16, 2022. *Id.* at 16-18. Simmons stated in his preliminary injunction motion that he was supposed to start chemotherapy again in January or February 2022 but was not receiving it. ECF 2 at 1.

In response to the preliminary injunction motion, the Warden provided Simmons' medical records that show at a March 10, 2022, Chronic Care Visit, the doctor noted that he would "contact local oncology service to see if routine oncology f/up needed." ECF 10-1 at 36. There is no mention of contacting a local oncology service until four months later on July 18, 2022, when a request was made for an outside appointment. ECF 10-2 at 29-31. Two months later, the notes from a September 6, 2022, Chronic Care Visit state that the request was approved but the appointment had not been scheduled. *Id.* at 46. The Warden reports, however, that the appointment has been scheduled for October 13, 2022, at an outside clinic. ECF 10-1 at 4. Neither party has updated the record with the outcome of that appointment.

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021) (citation omitted). However, they are

3

"not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. "[M]ere disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and internal quotation marks omitted). Instead, the court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). "The federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

The court cannot determine whether Simmons is receiving constitutionally adequate medical care on this record. There is no evidence about what happened at the oncology consultation, whether any further treatment was recommended, or whether Simmons is receiving the recommended treatment. Therefore, the Warden will be required to file a supplemental response to update Simmons' medical records and explain how Simmons is currently receiving constitutionally adequate medical care.

4

The second part of Simmons' preliminary injunction concerns his ability to care for his colostomy bag while in the Restricted Housing Unit. He was moved to RHU on June 16, 2022. ECF 10-2 at 16. He stated in his September 2022 motion that he "is on a Restrictive Housing Unit (hereafter RHU) thus his medical supplies, i.e., colostomy bags, are not allowed to be kept in his cell, nor on his person," and he "has not been allowed to properly clean the area where the colostomy bag and body connect because of RHU, and RHU allowed only three showers a week." ECF 2 at 2. The Warden's response does not specifically address these matters. The Warden provides evidence that Simmons changes his colostomy bag every 3-5 days and received 10 colostomy bags and supplies on May 9, 2022, June 5, 2022, and July 15, 2022. ECF 10-2 at 7, 51-53. But this does not address Simmons' complaint that he is prevented from caring for his colostomy bag as needed in RHU, nor does it establish that Simmons has continued to receive the necessary supplies after his July supplies ran out.

The Warden's response, therefore, must be supplemented to address these concerns. The record, though, suggests that this aspect of Simmons' preliminary injunction might be moot. At Simmons' Chronic Care Visit, on September 6, 2022, the doctor noted that Simmons reported he was leaving RHU in about two weeks. ECF 10-2 at 46. More than two months have passed since that visit, so it is possible that Simmons is no longer in RHU. If Simmons is no longer there, then the restrictions on possessing his colostomy supplies in his cell and the limits on showering are lifted, making a ruling on this aspect of his preliminary injunction motion unnecessary. Therefore, the Warden will be required to supplement his response to address Simmons' current housing

5

status and the current status of whether Simmons can access the supplies he needs in a timely fashion.

For these reasons, the court ORDERS the Warden John Galipeau to supplement his response to Simmons' motion for a preliminary injunction (ECF 2) as detailed in this order as soon as possible, but no later than **December 23, 2022**.

SO ORDERED on November 28, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT